IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | No. 14-520-5 |
| RAPHAEL HUNT-IRVING | : | |
| | : | |

McHUGH, J.                                                                                   March 5, 2021

## MEMORANDUM

This is a motion for compassionate release under 18 U.S.C. § 3582.  Petitioner Raphael Hunt-Irving was found guilty by a jury of conspiracy to distribute cocaine and related drug offenses.  He separately pleaded guilty to unlawful possession of a firearm.  He faced a Guideline range of 63 to 78 months and was sentenced to a total of 72 months.

Mr. Irving has served approximately 24 months at FCI Fort Dix, and now seeks early release because of the COVID pandemic.  Having reviewed the record, the motion will be denied.

The statute requires "extraordinary and compelling reasons" to grant release.  18 U.S.C. §3582 (c)(1)(A)(i).  Defendant fails to meet that standard.  Mr. Irving is 48 years old and aside from a spinal condition generally in good health. With respect to the risk of severe disease from COVID, Mr. Irving has one definitive risk factor, and two possible risk factors. Mr. Irving is mildly obese, with a body mass index (BMI) of 30.7 as of May, 2020.  The Centers for Disease Control (CDC) have now identified obesity — patients with a BMI of above 30 kg/m2 —as presenting a risk of severe disease to those infected by COVID. *See* Centers for Disease Control and Prevention,

1

*People with Certain Medical Conditions* (updated Feb 22, 2021).[1]  Separately, the CDC has categorized three classes of obesity, and fortunately Defendant is in the lowest risk category, class 1. *See* Centers for Disease Control and Prevention, *Defining Adult Overweight and Obesity*.[2] Given how slight the level of obesity, it is not unreasonable to expect that Mr. Irving could lower his weight and hence his risk by following the specific recommendations made to him by prison health professionals.

As to potential risk factors, Mr. Irving has hypertension, which the CDC states "might" present a risk of severe illness from COVID.[3]  A review of the underlying data shows mixed results in the literature, with some studies finding a risk and others not.  In any case, a review of Mr. Irving's records show that his hypertension is generally well-controlled with the standard medications he takes, Norvasc and Lisinopril.

The last potentially relevant factor is more complex. Mr. Irving suffers from ankylosing spondylitis, an inflammatory disease that over time can fuse vertebrae, and at advanced levels can cause deficits in posture affecting breathing.[4]  The record does not suggest that Defendant has progressed to such a point. But he receives infusions of the medication Humira to treat the spondylitis, which in some patients can suppress the immune system creating a risk of infection. The CDC has determined that such medications also "might" put an individual at greater risk of

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[2] https://www.cdc.gov/obesity/adult/defining.html

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[4] *Merck Manual, Professional Version*, https://www.merckmanuals.com/professional/musculoskeletal-and-connective-tissue-disorders/joint-disorders/ankylosing-spondylitis?query=ankylosing%20spondylitis, last updated May, 2020.

severe disease from COVD.[5]  But that risk is qualified in two respects.  First, the Full Prescribing Information for Humira, approved by the Food and Drug Administration, notes that "[m]ost patients who developed these infections were taking concomitant immunosuppressants such as methotrexate or corticosteroids."[6]  Mr. Irving is not on such medications.[7]  Second, because of COVID's ability to hyper-stimulate the immune system, Humira is in fact being studied as a COVID treatment by the University of Oxford.[8]  These offsetting factors do not rule out the possibility that Humira might prove to be a risk factor, but underscore the fact that it is far from established that it presents such a risk on the record here.

Mr. Irving's fears about the pandemic are understandable. Nonetheless, the Court of Appeals had made clear that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020).  Clearly, the efforts of the Bureau of Prisons have been met with mixed success, as outbreaks have occurred. At Fort Dix, there have been two outbreaks, albeit but with good outcomes, and fortunately still no deaths. *See* Federal Bureau of Prisons, *Coronavirus* (updated March 1, 2021).[9] On balance, I cannot say that a single risk factor, at the low end of the applicable range, coupled with two potential risk

---

[5] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#immunocompromised-state

[6] https://www.humira.com/global/frequently-asked-questions,

[7] He is administered Meloxicam, but that is a non-steroidal anti-inflammatory medication.

[8] Maria Anderson, *University of Oxford to test Abbvie's Humira as Covid-19 Treatment*, (October 5, 2020), https://www.beckershospitalreview.com/pharmacy/oxford-university-to-test-abbvie-s-humira-as-covid-19-treatment.html

[9] https://www.bop.gov/coronavirus/

factors, one being treated successfully, and the other unknown, provide an extraordinary and compelling reason for early release.

Even when a defendant shows extraordinary and compelling reasons for release, courts must consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether early release is merited.  18 U.S.C. § 3582(c)(1)(A).  Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)-(2).

After analyzing these factors, even if I deemed the combined risk factors to be compelling, I would still conclude that Mr. Irving's sentence should not be reduced.  I remain struck by the seriousness of the Mr. Irving's conduct.  He played a central role in a large conspiracy to import drugs to sell within the City of Chester. He used his position as a respected member of the community, and his business as a front, to disguise his involvement in dangerous and destructive conduct.  Absent far more compelling circumstances, I am obliged to conclude that his release at this time would fail to recognize the seriousness of his crimes, promote respect for the law, and could also fail to deter him from future criminal conduct notwithstanding his contention that he is now a changed person.  Accordingly, the motion for compassionate release is denied.

   /s/ Gerald Austin McHugh
United States District Judge